# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**

No. 16-408C
(Filed: February 16, 2023)

|  |  |
|---|---|
| **KENNETH L. BUHOLTZ**, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) ) |
| *Defendant.* | ) ) ) |

*Kenneth L. Buholtz*, McKinney, Texas, *pro se*.

*Delisa M. Sanchez*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington DC, for defendant, with whom on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Martin F. Hockey, Jr.*, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington DC. *Patrick D. Kummerer*, Major, Judge Advocate General's Corps, Litigation Attorney, U.S. Army Legal Services Agency, Fort Belvoir, VA, Of Counsel.

## OPINION AND ORDER

**BONILLA,** *Judge*.

      Kenneth L. Buholtz served in the United States Army as an enlisted service member and then a commissioned officer, rising to the rank of Lieutenant Colonel. His military service–spanning from 1975 through 2011–included two periods of active duty bookending a near decade in the Army Reserve. Mr. Buholtz's military career derailed following civilian criminal charges of child exploitation, resulting in his prosecution, conviction, and incarceration. Concurrently, Mr. Buholtz was diagnosed as suffering from post-traumatic stress disorder (PTSD) and panic disorder stemming from his tours of duty in Iraq.

In this action, Mr. Buholtz challenges the basis for and nature of his separation from the Army and numerous collateral issues presented to the Army Board for Correction of Military Records (ABCMR or Board) and the United States Department of State. Pending before the Court is plaintiff's motion to supplement the administrative record (ECF 132).[1] For the reasons set forth below, plaintiff's motion is DENIED and this action is DISMISSED-IN-PART for lack of subject matter jurisdiction.

## BACKGROUND

### I. Military Service

On March 28, 1975, Mr. Buholtz enlisted in the Army as a Private First Class and entered active duty on August 14, 1975. AR 2331–32, 3607–08.[2] On April 25, 1980, Mr. Buholtz received his commission and was appointed a Second Lieutenant Regular Army Aviation Officer through the Michigan State University Reserve Officers' Training Corps (ROTC). AR 720, 1884, 1886. Mr. Buholtz remained on active duty until September 30, 1992, when he voluntarily separated under the Voluntary Separation Incentive (VSI) program during the post-Gulf War military force reduction. AR 1419–20, 1779–81, 2336–37. On September 1, 1999, while continuing to serve in the Army Reserve, Mr. Buholtz was promoted to the rank of Lieutenant Colonel. AR 1671. Recalled to active duty in the aftermath of the September 11, 2001 terrorist attacks, Mr. Buholtz served from January 8, 2002, until October 31, 2011. AR 1441–42, 2662–63, 2727–29.

Relevant here, between June 2003 and April 2004, Mr. Buholtz served in the Republic of Colombia, South America. AR 720, 3991. Thereafter, from 2006 to 2007 and again in 2009, Mr. Buholtz served two tours of duty in Iraq in support of Operation Iraqi Freedom.[3] AR 720, 1702–06, 2662. Among his military awards and decorations, Mr. Buholtz was awarded the Bronze Star Medal "for exceptionally meritorious service" and the Army Commendation Medal "for meritorious service," respectively, during his deployments to Iraq. AR 1704, 2439–40. During his later

---

[1] This case was transferred to the undersigned for adjudication on February 28, 2022, pursuant to Rule 40.1(b) of the Rules of the United States Court of Federal Claims (RCFC). *See* ECF 140–41. Four days later, the parties filed a joint request to stay proceedings pending further consideration by the ABCMR. *See* ECF 142–43. Briefing on plaintiff's motion to supplement the administrative record continued through January 17, 2023. *See* ECF 132–39, 147–67.

[2] The administrative record filed by the government comprises 5,064 pages. *See* ECF 33, 110, 112, 123, 149. "AR __" cites to a Bates-numbered page in the administrative record (1 to 4,201 and B3352 to B4214).

[3] Between December 1990 and April 1991, during his initial service on active duty, Mr. Buholtz was deployed to Iraq in support of Operation Desert Storm. AR 720, 2970. Thereafter, between January 2002 and July 2003, Mr. Buholtz was deployed to the demilitarized zone in Korea. AR 720, 2970–71.

2

deployments to areas of combat operations, Mr. Buholtz began exhibiting symptoms of PSTD and panic disorder–a diagnosis later confirmed by the Medical Evaluation Board (MEB). AR 2968–87 (Jan. 24, 2011 MEB psychological examination and diagnosis); AR 2988–2994 (Jan. 14, 2011 MEB physical examination and diagnosis). On May 6, 2011, the Physical Evaluation Board (PEB) found Mr. Buholtz physically unfit for duty and recommended that he be placed on the Temporary Disability Retirement List pending reexamination in February 2012 or a determination of permanent disability by the U.S. Army Physical Disability Agency (PDA).[4] *See* AR 2946–48. The PDA review was administratively terminated on July 11, 2011. *See* AR 270.

In the interim, on March 31, 2010–immediately following his civilian arrest for the alleged sexual assault of a minor child and release on bail (discussed below)– Mr. Buholtz submitted a Request for Voluntary Special (Expedited) Retirement. AR 2895–97. On August 5, 2010, after receiving notice of the pending criminal charges, Mr. Buholtz's Command initiated adverse elimination proceedings. AR 2755–59; *see, e.g.*, AR 505–11, 2751–53, 2921 (Board of Inquiry scheduling). On October 4, 2010, Mr. Buholtz requested a Voluntary Retirement in Lieu of Elimination, seeking to be released from active duty and placed on the retired list pending the conclusion of the above-referenced MEB/PEB process. AR 713–15.

On July 21, 2011, the Secretary of the Army, by and through the Deputy Assistant Secretary of the Army (Review Boards), Manpower and Reserve Affairs, denied Mr. Buholtz's request for medical disability retirement and, instead, approved his retirement in lieu of elimination. AR 270. Consistent with the recommendation of the Army Grade Determination Review Board (AGDRB), Mr. Buholtz was separated effective October 31, 2011, and placed on the retired list effective November 1, 2011, with a reduction in grade from Lieutenant Colonel (O-5) to Major (O-4). AR 270; *see* AR 271–72, 702–03, 719, 1303–04, 2370–72. The reduction in grade was based on the AGDRB's determination that Mr. Buholtz last served satisfactorily as a Major. AR 272. Mr. Buholtz's Certificate of Release or Discharge from Active Duty (DD Form 214) lists his Type of Separation as "Retirement" and Character of Service as "Honorable," but includes the Separation Code "RNC" based upon "Unacceptable Conduct." AR 2662. As of his retirement, Mr. Buholtz was credited with 27 years and one day of military service under 10 U.S.C. § 1405.[5] AR 702.

---

[4] In early May 2011, the Department of Veterans Affairs proposed a 50% disability rating for Mr. Buholtz attributable to PTSD and a 20% disability rating for back issues (i.e., angular bulging, thoracolumbar spine) related to his military service. AR 383–97, 2948–49.

[5] Mr. Buholtz's requests to be placed on voluntary excess leave and/or accrued transition leave rather than remain in civilian confinement status between August 23, 2011, and his November 1, 2011 retirement date were denied. AR 104–08. Mr. Buholtz's civilian confinement began on or about June 13, 2011. *See* AR 105. By law, Mr. Buholtz is not entitled to service credit during periods of civilian confinement. 10 U.S.C. § 972(b)(3).

## II.   Civilian Criminal Proceedings

On March 22, 2010, Mr. Buholtz was arrested on a Collin County (Texas) arrest warrant, signed by a magistrate judge, on the charged offense of sexual assault of a child (a second degree felony).[6] AR 2760–62.  On March 26, 2010, he was released on bond initially set at $1 million (once reduced to $15,000 cash or $150,000 bond) and ordered to wear a global positioning satellite (GPS) electronic ankle monitor bracelet.  AR 2762, 2764–65.  Within hours of his release, and again on April 7, 2010, Mr. Buholtz was arrested for violating a condition of his bond and the terms of a March 23, 2010 Emergency Protective Order directing he stay away from his alleged victim.[7]  AR 2774–76; *see also* AR 2770–73.  On April 23, 2010, Mr. Buholtz was again released on bond with stricter conditions.  AR 165–67, 2784–85; *see also* AR 2786–89 (Military Protective Order modifications).  On December 9, 2010, a Collin County grand jury returned a True Bill of Indictment against Mr. Buholtz, charging him with eighteen (18) counts of sexual abuse of a minor.[8] AR 301–04.

On June 8, 2011, a federal grand jury sitting in the Eastern District of Texas returned a one-count indictment (under seal) against Mr. Buholtz, charging him with interstate transportation of a minor with the intent to engage that minor in sexual activity, in violation of 18 U.S.C. § 2423(a).  *See United States v. Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF 1).  Immediately following his June 13, 2011 arrest, Mr. Buholtz made his initial appearance before a United States magistrate judge, was arraigned and ordered detained pending trial.  *See id.* (ECF 5, ECF 10 at 1).

On November 14, 2011, Mr. Buholtz pleaded guilty to a one-count superseding indictment charging him with interstate transportation of a minor for sexual purposes in violation of 18 U.S.C. § 2423(a).  *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF 45, 49–56).  In pleading guilty, Mr. Buholtz admitted transporting a minor from California to Texas in March 2007 with the intent to engage in sexual

---

[6] On March 8, 2010, two weeks prior to his arrest, Mr. Buholtz filed a petition for divorce.  AR 2541–46.  In contesting the Army's decision to reduce his retirement grade from Lieutenant Colonel to Major, Mr. Buholtz noted the timing of the child abuse charges filed against him relative to his filing for divorce, further noting: "Indeed, my wife has herself since been charged with child sexual abuse offenses in Columbia, which raises serious questions about her credibility as to the allegations against me . . . ."  AR 378.

[7] A similar Military Protective Order was entered on March 30, 2010.  *Compare* AR 2770–73 *with* AR 2780–83.

[8] On February 1, 2011, without elaboration, the Army Fort Hood (Texas) Case Review Committee reviewed the alleged child abuse incident report and "determined that it did not meet [the] criteria for child abuse."  AR 235.

4

activity and, in fact, engaged in sexual activity with the minor in both states.[9] *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF 55).  For the commission of this federal offense, on March 25, 2013, Mr. Buholtz was sentenced to a ten-year term of imprisonment, followed by a five-year term of supervised release, and ordered to pay a mandatory $100 special assessment.[10]  *See Buholtz*, No. 11-cr-135 (E.D. Tex.)  (ECF 85–86).  Mr. Buholtz was released from federal prison on February 3, 2020,[11] and began serving his term of supervised release.

Mr. Buholtz was rearrested on November 2, 2022, in the Eastern District of Texas for allegedly violating the terms of his supervised release.[12]  *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF No. 147).  During his November 3, 2022 initial appearance, the duty magistrate judge granted the United States' motion to detain Mr. Buholtz.[13]  *See id*. (ECF 147–50).  Thereafter, on December 15, 2022, the magistrate judge conducted a final revocation hearing and found "ample evidence" Mr. Buholtz violated the terms of his supervised release.  *See id*. (ECF 158, 160).  The magistrate judge continued Mr. Buholtz's detention and recommended an 18-month term of imprisonment, followed by five years of supervised release.  *See id*. (ECF 160 at 7).  The magistrate judge further recommended imposing an additional special condition that "[Mr. Buholtz] must not allow any female friends, associates, colleagues, or tenants to reside on [his] property or at [his] residence" during his term of supervised release.  *See id.*

---

[9] Mr. Buholtz's efforts to later withdraw his guilty plea were denied.  *See United States v. Buholtz*, No. 11-cr-135, 2013 WL 842851 (E.D. Tex. Jan. 24, 2013), *adopted*, 2013 WL 842845 (E.D. Tex. Mar. 6, 2013), *aff'd*, 562 F. App'x 213 (5th Cir.), *cert denied*, 574 U.S. 903 (2014).  His subsequent request to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 were also denied. *See Buholtz v. United States*, No. 15-cv-70, 2019 WL 1396427 (E.D. Tex. Feb. 11, 2019), *adopted*, 2019 WL 1380408 (E.D. Tex. Mar. 26, 2019), *reconsideration denied*, 2021 WL 14277639 (E.D. Tex. Apr. 15, 2021).

[10] According to the Collin County (Texas) 296th District Court website, on April 12, 2013, following Mr. Buholtz's guilty plea and sentencing on the federal charge, the state charges were dismissed. *See* https://apps2.collincountytx.gov/JudicialRecords (Case No. 401-82696-2010) (criminal docket) (last visited Feb. 16, 2023); *see also* AR 3496 (dismissal of emergency protective order).  Thereafter, on or about September 18, 2020, Mr. Buholtz's related convictions for violating the March 23, 2010 Emergency Protective Order were expunged.  AR 3408–14.

[11] *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (inmate: Kenneth NMI Buholtz) (last visited Feb. 9, 2023).

[12] The violations alleged included: an August 24, 2022 arrest on a state charge of indecent assault; failure to abide by the terms of a sex offender treatment program resulting in his dismissal from the program for inappropriate behavior on or about August 30, 2022; possession of sexually explicit materials (i.e., nude photographs of his ex-wife Mr. Buholtz admitted accessing from her cellphone); unauthorized email contact with his minor child; and failure to timely submit monthly supervision reports.  *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF No. 160 at 2).

[13] On November 9, 2022, the assigned magistrate judge found probable cause of the alleged supervised release violations and ordered Mr. Buholtz's continued detention.  *See id*. (ECF No. 154).

On January 25, 2023, Mr. Buholtz appeared before a United States district judge for allocution. *See id.* (ECF 163). Save the recommended 18-month prison term, the district judge adopted the findings and conclusions of the magistrate judge; the district judge determined an upward variance was warranted and sentenced Mr. Buholtz to a 36-month term of incarceration. *See id.* (ECF 163–64). Judgment was entered accordingly. *See id.* (ECF 165). Mr. Buholtz is currently incarcerated in the Fannin County Adult Detention Center, located in Blue Ridge, Georgia.

### III.  Administrative Military Proceedings

Beginning in or about June 2005, and continuing through the litigation of this case, Mr. Buholtz filed a series of applications for administrative relief and requests for reconsideration with the ABCMR, including:

| Central Issue(s) | ABCMR Docket No. | Application Date (AR Cite) | Decision Date (AR cite) | Result |
|---|---|---|---|---|
| Promotion to Colonel (FY 2004) | 2005-0009253 | June 1, 2005 (AR 3185) | Oct. 25, 2005 (AR 3940–43) | Denied |
| – Requests for Reconsideration | 2010-0018892 | Oct. 18, 2006 (AR 3181–3251) & July 15, 2010 (\*\*\*)[14] | Feb. 10, 2011 (AR 1504) | Returned w/o action |
| Reimbursement: Physical Security Upgrades to Private Residence (Colombia) | 2010-0014215 | May 5, 2010 (AR 3058–62) | July 27, 2010 (AR 1540) | Returned w/o action |
| Promotion to Colonel (FY 2005 & FY 2006) | 2006-0015005 | (\*\*\*) | Sept. 11, 2007 (AR 1617–22) | Denied |
| – Requests for Reconsideration | 2010-0018892 | Apr. 30, 2009 (AR 1505–09) & July 15, 2010 (\*\*\*) | Feb. 10, 2011 (AR 1504) | Returned w/o action |
| OER Expungement (June 5, 2003 to May 15, 2004) | 2007-0013560 | Sept. 29, 2007 (AR 3141–80) | Nov. 27, 2007 (AR B4181–85) | Denied |
| Total Operational Flying Duty Credit (TOFDC) & Pilot Status Code (PSC) | 2008-0011488 | July 10, 2008 (AR 675–82) | June 25, 2009 (AR 1569–79) | Denied |
| – Request for Reconsideration | 2010-0013087 | Apr. 11, 2010 (AR 590–643) | Aug. 10, 2010 (AR 563–68) | Denied |
| Military Whistleblower Protection Act, 10 U.S.C. § 1034 | 2009-0010073 | Apr. 30, 2009 (AR 3063–3140) (AR B3352–B4214) | June 22, 2010 (AR 571–89) | Denied |
| – Requests for Reconsideration | 2016-0007218 | Mar. 26, 2016 (AR 2647–58) & Oct. 31, 2017 (AR 2627–42) | May 29, 2018 (AR 2624–25) | Returned w/o action |
| Medical Retirement (Lieutenant Colonel) vice Honorable Retirement for Unacceptable Conduct (Major) | 2012-0022969 | Dec. 9, 2012 (AR 3304–51) | Aug. 27, 2013 (AR 250–56) | Denied |

---

[14] "(\*\*\*)" denotes ABCMR applications and reconsideration requests not included in the administrative record but reflected in the Board's decisions or other correspondence.

| | | | | |
|---|---|---|---|---|
| – Request for Reconsideration | 2014-0015567 | (***) | Feb. 2, 2016 (AR 13) | Denied |
| – Request for Reconsideration | 2021-0008655 | Dec. 16, 2020 (AR 3405–06, AR 3416) | May 12, 2022 (AR 3356–75) | Denied |
| Survivor Benefit Plan (SBP) election | 2013-0000442 | Dec. 5, 2012 (AR 364–70) | Aug. 8, 2013 (AR 319–21) | Denied |
| Medical Retirement (Lieutenant Colonel) vice Honorable Retirement for Unacceptable Conduct (Major) & OER (Apr. 9, 2010 to Feb. 1, 2011) | 2014-0015567 | Aug. 20, 2014 (AR 129–245) | Jan. 28, 2016 (AR 15–33) | Denied |
| – Request for Reconsideration | 2016-0007218 | Mar. 26, 2016 (***) | May 29, 2018 (AR 2624–25) | Returned w/o action |
| – Request for Reconsideration | 2021-0008655 | Dec. 16, 2020 (AR 3405–06, AR 3416) | May 26, 2022 (AR 3354) | Denied |
| Time-In-Service & "Bad Time" lost during civilian confinement under 10 U.S.C. § 972 | 2015-0006188 | Oct. 15, 2014 (AR 3258) | Feb. 11, 2016 (AR 3–12) | Denied |
| – Requests for Reconsideration | 2017-0019246 (2014-0018954) (2014-0021088) (2021-0007961) | Aug. 7, 2017 (AR 2875–2885) & Oct. 18, 2017 (AR 2660–2871) | July 1, 2019 (AR 2222–30) | Denied |
| – Request for Action (final military pay-out of accrued leave $1,974.96) | 2021-0007961 | Dec. 22, 2020 (***) | Aug. 17, 2021 (***) (DFAS paid) | Granted |
| Survivor Benefit Plan (SBP) (election and overpayment) | 2016-0004885 | Feb. 18, 2016 (AR 2523–2607) | Jan. 30, 2018 (AR 2287–96) | Granted |
| Voluntary Separation Incentive (VSI) renumeration (waiver) | 2018-0003559 | Jan. 17, 2018 (AR 2297–2307) | July 15, 2019 (AR 2212–19) | Denied |
| Concurrent Retirement Disability Pay (CRDP) | 2019-0010257 | Aug. 7, 2017 (***) | Feb. 14, 2020 (AR 2152–62) | Denied |
| – Request for Reconsideration | 2020-0007129 | Dec. 14, 2020 (AR 2006–40) & Apr. 21, 2020 (AR 2124–40) | Feb. 9, 2021 (AR 1994–2005) | Denied |
| Transfer Education Benefits (TEB) (dependent child) | 2021-0005848 | July 27, 2020 (AR 3497–3532) | June 3, 2021 (AR 3377–82) | Granted |

## IV. Procedural History

On March 13, 2015, while incarcerated in the Federal Correctional Complex, Petersburg (FCI Petersburg), located in Petersburg, Virginia, Mr. Buholtz initiated this action in the United States District Court for the District of Columbia. *See Buholtz v. Trombitas*, No. 15-cv-370 (D.D.C.) (ECF 1). In his original complaint, Mr. Buholtz appealed a housing reimbursement dispute related to his active duty service in Colombia between July 2003 and April 2004. Mr. Buholtz further asserted that his two-month premature reassignment stateside was in retaliation

7

for his reported whistleblowing activities.[15]  Mr. Buholtz named as defendants seven current and retired military officers and civilian government officials as well as the Army and State Department.  Alleging negligence and intentional torts, Mr. Buholtz claimed money damages in the forms of "actual financial damages," "whistleblower incentives," "treble damages," and "punitive damages" totaling more than $11.6 million.  *See Buholtz*, No. 15-cv-370 (D.D.C.) (ECF 1 at 13).

On January 27, 2016, the District of Columbia District Court transferred the action to this Court, citing the Tucker Act, 28 U.S.C. § 1491(a)(1), which vests the United States Court of Federal Claims with exclusive jurisdiction over claims for money damages against the United States "not sounding in tort."[16]  *See id.*  Between March 31, 2016, and August 7, 2019, Mr. Buholtz filed five amended complaints.  ECF 3–4, 6, 28, 75.  Count One of the 11-count fifth amended complaint alleges the government failed to timely respond to 25 requests for information and documents submitted under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  Count Two asserts the ABCMR failed to timely adjudicate 21 applications for the correction of military records under 10 U.S.C. § 1552.  Count Three charges that the Army's April 2004 reassignment of Mr. Buholtz from Colombia stateside was arbitrary, capricious, an abuse of discretion, and contrary to law, entitling him to lost Aviation Incentive Pay under 37 U.S.C. § 204.  Count Four asserts that during his deployment to Colombia, Mr. Buholtz engaged in whistleblower activities, meriting protection and relief under the Military Whistleblower Protection Act, 10 U.S.C. § 1034.  Count Five asserts Mr. Buholtz was wrongfully denied his housing allowances while stationed

---

[15] On March 11, 2004, Mr. Buholtz filed a complaint with the United States General Accounting Office (n/k/a United States Government Accountability Office (GAO)) alleging fraud, waste, and abuse within his unit station in Colombia.  AR B3446–47; *see* AR B3490–3501 (U.S. Army Inspector General Agency Report of Investigation).  Thereafter, beginning on June 8, 2008, Mr. Buholtz reported incidents of retaliation to the Department of Defense Office of Inspector General (DoD OIG).  AR 2633–34, 3110.

[16] The United States moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Specifically, the government argued that Mr. Buholtz's claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) & 2671 *et seq.*, were barred due to: plaintiff's failure to exhaust administrative remedies, 28 U.S.C. § 2675(a); the expiration of the governing two-year statute of limitations, 28 U.S.C. § 2401(b); the *Feres* doctrine, *Feres v. United States*, 340 U.S. 135 (1950); and the fact that the alleged tortious acts took place in a foreign country, 28 U.S.C. § 2680(k).  The government further noted that punitive damages against the United States are statutorily barred, 28 U.S.C. § 2674.  Finally, the government argued that plaintiff's demand for monetary damages against the United States in excess of $10,000 for claims not sounding in tort fell within the exclusive jurisdiction of the Court of Federal Claims, 28 U.S.C. § 1491(a)(1).  In response to the government's dispositive motion, Mr. Buholtz moved to transfer the case to this Court in accordance with 28 U.S.C. § 1631.  In granting the cross-motion to transfer the case, the district court did not address the tort claims over which this Court lacks jurisdiction.  *See Starnes v. United States*, 162 Fed. Cl. 468, 473 (2022) ("The Tucker Act expressly states that this Court lacks subject matter jurisdiction over claims sounding in tort." (citing 28 U.S.C. § 1491(a)(1); listing cases discussing well-settled jurisdictional constraints).

in Colombia under 37 U.S.C. § 204 and, thereafter, the government foreclosed the continued leasing of Mr. Buholtz's Colombian residence. Count Six contests the accuracy of the alleged "feint praise" included in Mr. Buholtz's Department of the Army (DA) Form 67-9 (Officer Evaluation Report or OER) for the period June 5, 2003 through May 15, 2004.[17] Count Seven avers Mr. Buholtz is entitled to be retroactively considered for promotion to Colonel by a duly constituted Special Selection Board (SSB) and, if selected, awarded constructive service and resulting back pay and allowances. Count Eight challenges the Army's denial of Mr. Buholtz's request for a waiver regarding the recoupment of approximately $150,000 in VSI payments made following Mr. Buholtz's 1992 voluntary separation due to his post-October 2011 collection of military retired pay. Count Nine contests the authority of senior officers in Mr. Buholtz's chain of command to "artificially insert themselves" into his Officer Evaluation Report (OER) for the period of April 9, 2010, through February 1, 2011.[18] Count Ten asserts that Mr. Buholtz's accrued leave and time in service (TIS) was not correctly calculated at the time of his separation.[19] Finally, in Count Eleven, Mr. Buholtz claims he was wrongly separated at the reduced grade of Major and is, instead, entitled to a medical disability retirement at the grade of Lieutenant Colonel or Colonel under 10 U.S.C. § 1201.

Save the parties' continuing (and evolving) dispute regarding the administrative record, this matter has been effectively stayed since December 2017, to allow the ABCMR to further consider Mr. Buholtz's administrative claims and the parties to discuss the contents of the administrative record. *See, e.g.*, ECF 44, 47, 77, 92, 105, 108, 116, 121, 143, 145, 148, 151, 153, 155, 158, 159, 166. In assessing plaintiff's motion to supplement the administrative record (ECF 132), the Court necessarily reviewed the 5,064-page administrative record filed to date and examined the claims alleged to determine whether the tendered supplemental documents–totaling 685 pages–are duplicative or cumulative and, if not, whether they are sufficiently probative of issues currently before the Court. In doing so, the Court determined that Counts I, II, and IV are outside the Court's jurisdiction and must be dismissed. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*.") (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998)).

---

[17] The challenged OER is at AR 3192–93.

[18] The challenged OER is at AR 1695–97.

[19] In his fourth amended complaint, Mr. Buholtz also asserted that his Survivor Benefit Plan (SBP) account was not properly administered under 10 U.S.C. §§ 1147–55.

## DISCUSSION

### I. Subject Matter Jurisdiction

#### A. Count I: Freedom of Information Act and Privacy Act

In Count I, Mr. Buholtz alleges the government failed to timely respond to his 25 requests for information and documents submitted under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. In support of this Court's authority to adjudicate the government's responsiveness to his FOIA requests, Mr. Buholtz cites a portion of 5 U.S.C. § 552a(g)(4) (civil remedies), which provides in full:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of–
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4).

However, jurisdiction over such claims is statutorily vested exclusively in United States district courts. *See* § 552a(g)(1) ("[T]he individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection."); *Snowton v. United States*, 216 F. App'x 981, at *1 (Fed. Cir. 2007) (Court of Federal Claims lacks jurisdiction over Privacy Act and Freedom of Information Act claims) (citing *Instrument Sys. Corp. v. United States*, 212 Ct. Cl. 99, 104, 546 F.2d 357 (1976)). Accordingly, Count I must be dismissed.

#### B. Count II: Timeliness of ABCMR Decisions

Count II asserts the ABCMR failed to timely adjudicate Mr. Buholtz's 21 applications for administrative relief in accordance with 10 U.S.C. § 1557. Section 1557(b) provides:

Clearance deadline for all applications.–Final action by a Corrections Board on all applications received by the Corrections Board (other than those applications considered suitable for administrative correction) shall be completed within 18 months of receipt.

10 U.S.C. § 1557(b). The statute provides for a discretionary Secretarial (nondelegable) waiver of this deadline and notes that the "[f]ailure of a Corrections Board to meet the applicable timeliness standard . . . does not confer any presumption or advantage with respect to consideration by the board of any application." *See id.* § 1557(c)–(d); *see Lewis v. United States*, 476 F. App'x 240, 245 (Fed. Cir. 2012) ("[T]he failure to meet the timeliness standard [in § 1557] cannot be the basis for finding error in the BCNR's decision.").

Moreover, as specified in the statute, the consequence of an alleged untimely adjudication by the ABCMR is inclusion of the matter in an annual report to Congress by the Army Secretary–not mandated monetary damages to an individual applicant. *See* 10 U.S.C. § 1557(e). Because the statute is not money-mandating, this claim falls outside the jurisdiction of this Court. *See Lewis*, 476 F. App'x at 244 (quoting *Moden v. United States*, 404 F.3d 1335, 1341 (Fed.Cir.2005); *Collins v. United States*, 67 F.3d 284, 286 (Fed. Cir. 1995)). Accordingly, Count II must be dismissed.

### C.  Count IV: Military Whistleblower Protection Act

In Count IV, Mr. Buholtz seeks relief under the Military Whistleblower Protection Act, 10 U.S.C. § 1034, as amended Pub. L. 117-286, 136 Stat. 4196 (Dec. 27, 2022). In his complaint, however, Mr. Buholtz twice acknowledges that the statute is not money-mandating. *See* ECF 75 at 18, 20. As such, this Court lacks jurisdiction to adjudicate Count IV.[20] *See Lewis*, 476 F. App'x at 244 (affirming Court of Federal Claims' dismissal of whistleblower claims for lack of jurisdiction) (citing *Gant v. United States*, 63 Fed. Cl. 311, 316 (2004); *Soeken v. United States*, 47 Fed. Cl. 430, 433 (2000); *Hernandez v. United States*, 38 Fed. Cl. 532, 536–37 (1997)). Accordingly, Count IV must be dismissed.

---

[20] Mr. Buholtz's citation to the whistleblower awards under 26 U.S.C. § 7623(b) is unavailing. That statute–applicable to civilian employees and contractors and not military personnel–vests exclusive jurisdiction over the propriety of any award in the United States Tax Court, *see id.* § 7623(b)(4), and vests exclusive jurisdiction over any civil or enforcement action in federal district courts. *See id.* § 7623(d)(2)(A)(ii).

## II. Supplementation of the Administrative Record

### A.   Legal Standard

The Supreme Court has long held that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Consequently, "the parties' ability to supplement the administrative record is limited." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). More specifically, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively *de novo* review.'" *Id.* (citation omitted). This legal standard applies to judicial review of decisions made by military corrections boards. *Walls v. United States*, 582 F.3d 1358, 1367–68 (Fed. Cir. 2009).

"In military pay cases before this court, an alternative to supplementation of the administrative record is to remand the case to the corrections board whose decision is being reviewed, so that the board may render a decision on a complete record." *Miller v. United States*, 119 Fed. Cl. 717, 727 (2015) (citing cases). Indeed, a court may, only in exceedingly rare circumstances, consider in the first instance evidence not presented to the corrections board; such evidence may be new or newly discovered or material the military pay claimant failed or elected not to submit as part of their application for administrative relief. *See Walls*, 582 F.3d at 1367 ("If the record is inadequate, '[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry,' and instead 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Barnick v. United States*, 591 F.3d 1372, 1382 (Fed. Cir. 2010) ("[W]here evidence could have been submitted to a corrections board and was not, the evidence is properly excluded by the Court of Federal Claims.") (citing *Walls*, 582 F.3d at 1358)). A notable exception to the general rule is "where bad faith or bias is alleged to have tainted the proceedings under review." *Miller*, 119 Fed. Cl. at 727. This case presents no credible allegation of bad faith or bias.

To merit judicial consideration of supplemental material or a remand to the military corrections board for further administrative proceedings, the proffered supplement to the administrative record must be probative. *Miller*, 119 Fed. Cl. at 727. "Probative evidence" is defined as: "Evidence that tends to prove or disprove a point in issue." *Probative Evidence*, BLACK'S LAW DICTIONARY 701 (11th ed. 2019).

Here, a significant number of tendered documents are already included in the administrative record. The remaining documents are cumulative or not probative and, consequently, their omission does not preclude effective judicial review or otherwise warrant remand.

### B.   Proffered Supplemental Record

#### 1.   *Duplicate Records*

In the index accompanying his original motion to supplement the administrative record, Mr. Buholtz identifies 24 categories of documents totaling 685 pages (Bates numbers B4216 to B4900). *See* ECF 132-1 at 1–2. On October 11, 2022, following discussions with defendant's counsel, Mr. Buholtz filed–and the Court granted–an unopposed motion to partially withdraw his motion to supplement the administrative record; specifically, the parties agreed that 245 of the 685 pages tendered are included in the administrative record filed by the government.[21] *See* ECF 159–60. Mr. Buholtz now seeks to withdraw his concurrence due to defendant's opposition to adding the remaining 440 pages to the administrative record. *See* ECF 167 at 5–6.

In support of his change in position, Mr. Buholtz does not assert that the 245 pages are not substantively identical to documents already in the administrative record; instead, he proffers that the tendered 685-page supplement "will yield a more cohesive and easier to read final [b]rief." *See* ECF 167 at 5–6. The administrative record filed in this case already consist of multiple copies of the same documents largely due to the inclusion of Mr. Buholtz's ABCMR application packets (and attachments) and requests for action and reconsideration. There is no basis in law or need in fact for additional copies of the same documents already included in the administrative record.

Nevertheless, in evaluating the pending motion, the Court reviewed the entire 5,064-page administrative record filed by the government, performed a side-by-side comparison with the tendered 685-page supplement, and examined whether the non-duplicate pages are probative of the remaining claims properly before the Court. The Court concludes that Mr. Buholtz's motion must be denied. The chart below identifies the documents and pages that will not be added to the administrative record since they are already included substantively if not identically:

---

[21] To be fair, Mr. Buholtz's original motion to supplement the administrative record was filed on November 10, 2021. *See* ECF 132. Thereafter, on July 25, 2022, the government filed a second supplemental administrative record following additional proceedings before the ABCMR. *See* ECF 149. Although certain documents include FOIA notations, Mr. Buholtz acknowledged they "[are] not believed to be of probative value." *See* ECF 160 at 1.

| Document Description | Plaintiff's Bates No. (Administrative Record) |
|---|---|
| ARBA letter re ABCMR Docket No. 2019-0010257 (CRDP) (Sept. 12, 2019) | B4476 (AR 2202) |
| Supplemental submission re ABCMR Docket No. 2014-0015567 (retirement) (Oct. 26, 2015) (with enclosures) | B4477–4502 (AR 3579–3604) |
| ABCMR Application (Dec. 9, 2012) (OER) (with enclosure) | B4503–07 (AR 182–84) |
| Request for Action re ABCMR Docket No. 2016-0007218 (retirement) (Mar. 26, 2016) | B4509–18 (AR 2647, AR 2649–53, AR 2655–57) |
| Request for Action re ABCMR Docket No. 2021-0005848 (TEB) (Feb. 19, 2021) | B4520, B4522, B4524–29 (AR 3383–84, AR 3470–72, AR 3503–05) |
| ARBA letter re ABCMR Docket No. 2010-0014215 (housing security upgrades) (July 27, 2010) | B4531 (AR 1540) |
| Plaintiff's Memorandum to State Department re Request for Reimbursement of Residential Security Updates (Apr. 30, 2004) | B4533–35 (AR B3753–55) |
| Request for Reconsideration re ABCMR Docket No. 2011-0013213 (retirement) (Dec. 16, 2020) | B4537–39, B4543–54 (AR 3405–16) |
| Petition for Expunction of Criminal Records filed in Collin County (Texas) state court (Aug. 11, 2020) (with enclosures) | B4564–87 (AR 3473–96) |
| ARBA letter re ABCMR Docket No. 2014-0018954 (TIS) (Nov. 17, 2014) | B4592 (AR 80) |
| ARBA letter re ABCMR Docket No. 2014-0021088 (TIS) (Jan. 15, 2015) | B4593 (AR 78) |
| ABCMR Memorandum re ABCMR Docket No. 2012-0022969 (retirement) (Aug. 28, 2013) (missing pages) | B4604–05 (AR 309, AR 315–16) |
| Army Human Resources Command Memorandum (June 16, 2011) (without enclosures) | B4606 (AR 710) |
| Army Headquarters, 1st Cavalry Division Memorandum (May 22, 2011) (without enclosures) | B4607 (AR 711) |
| Army Headquarters, 1st Cavalry Division Memorandum (Oct. 4, 2010) (authored by plaintiff; missing past page) | B4608 (AR 713–14) |
| Miscellaneous records re *Texas v. Buholtz*, Crim. No. 199-01224-2010 (Collin County, Texas) | B4613–15 (AR 550–51); B4777–80 (AR 1125–28); B4782–94 (AR 350–59); B4797 (AR 547); B4805–10 (AR 765–67); B4855–58 (AR 335–53); B4864–69 (AR 530–32, AR 1125–27) |
| Miscellaneous Military Personnel Disciplinary Tables | B4616–18 (AR 790–92) |
| Miscellaneous FOIA Correspondence | B4623–25 (AR 305–07) |
| Miscellaneous ABCMR Correspondence | B4627–29 (AR 371–73) |
| Miscellaneous Military Personnel Records (Buholtz) | B4630–31 (AR 1689–90); B4635 (AR 1303); B4637–44 (AR 48, AR 104, AR 702–03, AR 269, AR 706, AR 1041); B4651–57 (AR 378–79, AR 686, AR 710–11, AR 272); B4697 (AR 1698); B4706–08 (AR 487–89); B4714–18 (AR 1695–97, AR 902); B4725–26 (AR 498–99); B4728–41 (AR 712–15, AR 740–42, AR736, AR 1072–77); B4746–66 (AR 722–28, AR 1101–02, AR 1113–15, AR 519–22, AR 737–39); B4770–75 (AR 743–48); B4811–13 (AR 770–72); B4816–23 (AR 775–78, AR 720, AR 2123, AR 783, AR 2446); B4829–30 (AR 556); B4843–44 (AR 1160–61); B4848–49 (AR 1702–03) |

| | |
|---|---|
| Plaintiff's Memorandum re Request for Voluntary Retirement as an Exception to Policy (Mar. 31, 2010) | B4859–61 (AR 2895–97) |
| Department of Veterans Affairs Memoranda (May 2011) & Miscellaneous Records | B4662–67 (AR 1298–1300); B4678–96 (AR 380–94) |
| Miscellaneous PEB & MEB Records | B4671–76 (AR 1691–92, AR 273–76); B4701–04 (AR 398, AR 1693–94); B4709 & B4711 (AR 1201); B4719–24 (AR 1251, 463–67); B4743 (AR 495–97) |
| Miscellaneous Buholtz's Civilian Attorney Correspondence | B4698–99 (AR 793–94); B4727 (AR 560) |
| Defense Finance and Accounting Service (DFAS) letter re ABCMR Docket No. 2021-0007961 (final Leave and Earning Statement) (June 8, 2015) | B4881 & B4892 (AR 2192) |

### 2. *Cumulative and Not Probative*

The remaining tendered documents are either cumulative of evidence already included in the administrative record and/or lack probative value: relate to claims outside the Court's jurisdiction (now dismissed); involve issues not before the Court (e.g., relief granted by the ABCMR, congressional correspondence); and non-substantive correspondence and documents (e.g., letters confirming receipt, mail tracking information, blank forms, general information). Accordingly, as specified in the chart below, they do not satisfy the requisite standard whereby their omission precludes effective judicial review or otherwise warrant remand to the ABCMR or other government agency or entity for further consideration.

| **Plaintiff's Description** | **Plaintiff's Bates No.** | **Court's Finding** |
|---|---|---|
| Army Review Boards Agency (ARBA) letter re change of address (Jan. 24, 2018) | B4216 | Not probative (non-substantive, relating to issue not before the Court) |
| ARBA Congressional Liaison letter (Sept. 14, 2021) | B4217 | Not probative (non-substantive) |
| Plaintiff's letters to the Department of Defense (DoD) re: VSI waiver and mail tracking receipts (Dec. 2020 to July 2021) | B4218–24 | Cumulative (ABCMR Docket No. 2018-0003559 documentation included in the administrative record) & not probative (non-substantive) |
| Army Criminal Investigation Command (CID) FOIA releases (Sept. 26 & Dec. 8, 2014) (with enclosures) | B4225–30, B4231–72 | Not probative (relate to FOIA and whistleblower claims outside Court's jurisdiction) & cumulative (ABCMR Docket Nos. 2007-0013560, 2008-0011488 & 2010-0014215 documentation included in the administrative record) |
| U.S. Secret Service FOIA releases (June 26, 2005 & Sept. 18, 2015) (with enclosures) | B4273–76 | (same as above) |
| Army OIG FOIA release (Oct. 18, 2006 & May 1, 2017) (with enclosures) | B4277–4347, B4398–4469 | (same as above) |
| DoD IG FOIA releases (Sept. 8, 2016 & Aug. 20, 2015) (with enclosures) | B4348–73, B4374–97 | (same as above) |

15

| Congressional Correspondence re: VSI (Aug. 22, 2021 to Sept. 17, 2021) | B4470–74 | Not probative (non-substantive) & cumulative (ABCMR Docket No. 2018-0003559 documentation included in the administrative record) |
|---|---|---|
| ARBA letter re retirement (Nov. 30, 2012) | B4475 | Not probative (non-substantive) & cumulative (ABCMR Docket Nos. 2012-0022969 & 2014-0015567 documentation included in the administrative record) |
| Request for Action re ABCMR Docket No. 2016-0007218 (Feb. 5, 2017) | B4508 | Not probative (non-substantive) & cumulative (ABCMR Docket No. 2016-0007218 documentation included in the administrative record) |
| Army letter re ABCMR Docket No. 2016-0007218 (Apr. 14, 2016) | B4519 | (same as above) |
| USPS tracking receipts | B4521 & B4523 | (same as above) |
| List of military websites re educational scholarships and grants | B4530 | Not probative (non-substantive) |
| Army FOIA and Privacy Division release re ABCMR Docket No. 2010-0014215 (Mar. 16, 2016) | B4532 | Not probative (non-substantive) & cumulative (ABCMR Docket No. 2010-0014215 documentation included in the administrative record) |
| ARBA letter re ABCMR Docket No. 2021-0008655 (May 7, 2021) | B4536 | Not probative (non-substantive) & cumulative (ABCMR Docket No. 2021-0008655 documentation included in the administrative record) |
| USPS tracking information and blank "Attachment" page re1 ABCMR Docket No. 2021-0008655 | B4540–42 | (same as above) |
| Miscellaneous records re *Texas v. Buholtz*, Crim. Nos. 199-01224-2010; 004-82435-10 (Collin County, Texas); Cause No. 219-51173-2010 (Collin County, Texas) | B4555–63, B4742, B4781, B4795–96, B4798–4804, B4827–28, B4833–34, B4841, B4850–54, B4862–63, B4870–75 | Cumulative (court records, including dismissal of state charges following Mr. Buholtz's guilty plea and sentencing on related federal charge, already in the administrative record)[22] |
| Partial ABCMR Application (Apr. 30, 2009) | B4591 | Not probative (relates to ABCMR timeliness outside Court's jurisdiction) |
| Army FOIA and Privacy Division release (Jan. 21, 2015) (and enclosures) | B4588–90, B4594–4603 | Not probative (relate to FOIA claim outside Court's jurisdiction) & cumulative (ABCMR Docket Nos. 2012-0022969 & 2014-0015567 documentation included in the administrative record) |
| Plaintiff's timeline of events/document index | B4609–12 | Not probative; Cumulative (summary of documents included in administrative record) |

---

[22] To the extent necessary, rather than supplement the administrative record, the Court may take judicial notice of matters of public record such as the tendered additional records from Mr. Buholtz's state court criminal proceedings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006), *cited in Diversified Group, Inc. v. United States*, 123 Fed. Cl. 442, 452 n.7 (2015), *aff'd*, 841 F.3d 975 (Fed. Cir. 2016).

| | | |
|---|---|---|
| Miscellaneous FOIA correspondence between Plaintiff (himself and through counsel) and the Army (with enclosures) | B4619–22, B4626, B4632–34, B4636, B4767–69 | Not probative (relate to FOIA claim outside Court's jurisdiction) & cumulative (ABCMR Docket No. 2014-0015567 documentation included in the administrative record) |
| Miscellaneous Military Personnel Records re medical retirement | B4645–50, B4658–61, B4677, B4700, B4705, B4710, B4712–13 | Cumulative (ABCMR Docket Nos. 2012-0022969 & 2014-0015567 documentation included in the administrative record) |
| Department of Veterans Affairs general information re benefits (pages 4–6 only) | B4668–70 | Not probative (general non-substantive and incomplete information) & cumulative (ABCMR Docket Nos. 2012-0022969 & 2014-0015567 documentation included in the administrative record) |
| Unexecuted "Acknowledgement" | B4776 | Not probative & cumulative (submission of Request for Voluntary Retirement in Lieu of Elimination documentation included in the administrative record). |
| Army Memoranda re Civilian Criminal Investigation (Apr. to May 2010) | B4814–15, B4831–32, B4835–38 | Cumulative (contemporaneously-issued substantively similar memoranda included in the administrative record) |
| Military Training Schedule (general information) (Aug. 2-5, 2010) | B4824–26 | Not probative (general information) |
| Memorandum re Justification for Request for Voluntary Retirement as an Exception to Policy (May 5, 2010) | B4839–40 | Cumulative (similar memorandum submitted on March 31, 2010 included in the administrative record) |
| Transition Center Worksheet (Oct. 31, 2011) & Preseparation Counseling Checklist for Active Component Service Members (Apr. 13, 2010) | B4842, B4845–47 | Cumulative (military record of service and retirement documentation included in the administrative record) |
| Miscellaneous correspondence re Request for Action re Final Payment of Accrued Leave (ABCMR Docket No. 2021-0007961) | B4876–80, B4885–91, B4893-900 | Cumulative (ABCMR Docket No. 2015-0006188 and previous reconsideration requests, ABCMR Nos. 2017-0019246, 2014-0018954 & 2014-0021088, documentation included in the administrative record); Not probative (issue resolved in plaintiff's favor and no longer pending in this case) |
| Blank ABCMR Application | B4882–84 | Not probative (blank application) |

Accordingly, Mr. Buholtz's motion to supplement the administrative is denied.

### III.  Continued Proceedings

With the composition of the administrative record resolved, we must at last turn to the merits of the remaining claims pending before the Court. In accordance with the schedule below, the parties are directed to file cross-motions for judgment on the administrative record on Counts Three and Five through Eleven under RCFC 52.1(c).

17

## CONCLUSION

For the foregoing reasons,

(1) Counts One, Two, and Four of the Fifth Amended Complaint (ECF 75) are **DISMISSED** for lack of subject matter jurisdiction;

(2) Plaintiff's Motion to Supplement the Administrative Record (ECF 132) is **DENIED**;

(3) The Clerk of Court is directed to **LIFT** the **STAY** entered in this case on November 22, 2022 (ECF 166);

(4) Defendant shall **FILE** a Motion for Judgment on the Administrative Record on or before **March 17, 2023**;

(5) Plaintiff shall **FILE** a Consolidated Response to Defendant's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record **within 30 days** of the filing of defendant's dispositive motion;

(6) Defendant shall **FILE** a Consolidated Response to Plaintiff's Cross-Motion for Judgment on the Administrative Record and Reply in Further Support of Defendant's Motion for Judgment on the Administrative Record **within 30 days** of the filing of plaintiff's dispositive cross-motion; and

(7) Plaintiff shall **FILE** a Reply in Further Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record **within 14 days** of the filing of defendant's response to plaintiff's dispositive cross-motion.

It is so **ORDERED**.

_____
Armando O. Bonilla
Judge