# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 16-408C
(Filed: August 4, 2023)

|  |  |
|---|---|
| **KENNETH L. BUHOLTZ**, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) ) |

*Kenneth L. Buholtz*, McKinney, Texas, pro se.

*Delisa M. Sanchez*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington DC, for defendant, with whom on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Martin F. Hockey, Jr.*, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington DC.  *Patrick D. Kummerer*, Major, Judge Advocate General's Corps, Litigation Attorney, U.S. Army Legal Services Agency, Fort Belvoir, VA, Of Counsel.

### OPINION AND ORDER[1]

**BONILLA, *Judge*.**

      Kenneth L. Buholtz served in the United States Army as an enlisted soldier and later a commissioned officer, rising to the rank of Lieutenant Colonel.  His 36-year military career–spanning 1975 through 2011–included two periods of

---

[1] This case was transferred to the undersigned for adjudication on February 28, 2022, pursuant to Rule 40.1(b) of the Rules of the United States Court of Federal Claims (RCFC).  Four days later, the parties filed a joint request to stay proceedings pending further consideration of plaintiff's claims by the Army Board for Correction of Military Records (ABCMR or Board).  Meanwhile, as noted *infra*, between November 10, 2021, and February 16, 2023, the parties engaged in protracted negotiations and litigation over the contents of the administrative record.  Briefing on the dispositive cross-motions resolved herein continued through July 24, 2023.  The Court deems additional briefing and oral argument unnecessary.

active duty bookending a near decade of service in the Army Reserve. Mr. Buholtz's military career derailed following civilian state and then federal criminal charges of child exploitation, resulting in his subsequent prosecution, conviction, and incarceration. Concurrently, Mr. Buholtz was diagnosed as suffering from post-traumatic stress disorder (PTSD) and panic disorder stemming from his deployments to Iraq.

In this action, Mr. Buholtz challenges the basis for and nature of his separation from the Army and raises myriad collateral issues presented to the ABCMR and the United States Departments of Defense and State over the last 20 years. In an Opinion and Order dated February 16, 2023, the Court denied Mr. Buholtz's motion to supplement the administrative record and, concomitantly, dismissed *sua sponte* Counts I, II, and IV of his fifth amended complaint for lack of subject matter jurisdiction. *Buholtz v. United States*, No. 16-408, 2023 WL 2054073 (Fed. Cl. Feb. 16, 2023). Pending before the Court are the parties' dispositive cross-motions with regard to the remaining counts in plaintiff's complaint (i.e., Counts III and V–XI). For the reasons set forth below, defendant's motion to dismiss or, in the alternative, for judgment on the administrative record is GRANTED and plaintiff's cross-motion for judgment on the administrative record is DENIED.

## BACKGROUND

### I. Military Service

Mr. Buholtz enlisted in the Army on March 28, 1975, and entered active duty on August 14, 1975. AR 2331–32, 3607–08.[2] On April 25, 1980, Mr. Buholtz earned his commission and was appointed a Second Lieutenant Regular Army Aviation Officer through the Michigan State University Reserve Officers' Training Corps (ROTC). AR 720, 1884, 1886. Mr. Buholtz remained on active duty until his voluntarily separation on September 30, 1992, during the post-Gulf War military force reduction under the Voluntary Separation Incentive (VSI) program. Codified at 10 U.S.C. §§ 1175–1175a, the VSI program offers a financial incentive to members of the armed forces to transfer to a reserve component in exchange for an annual annuity payment equaling 2.5 percent of the member's annual basic pay for each year of military service. *See id.* § 1175(a)(1) & (e)(1). Following his transfer to the Army Reserve, Mr. Buholtz began receiving annual VSI payments of approximately $16,000. AR 1419–20, 1779–81, 2336–37; ECF 75 at 27. On September 1, 1999, while continuing to serve in the Army Reserve, Mr. Buholtz was promoted to the rank of Lieutenant Colonel. AR 1671.

---

[2] The administrative record filed by the government comprises 5,064 pages. *See* ECF 33, 110, 112, 123, 149. "AR __" cites to a Bates-numbered page in the administrative record (1 to 4,201 and B3352 to B4214).

In the aftermath of the September 11, 2001 terrorist attacks, Mr. Buholtz was voluntarily recalled to active duty and served from January 8, 2002, until his retirement effective October 31, 2011. AR 1441–42, 2662–63, 2727–29. Relevant here, between June 2003 and April 2004, Mr. Buholtz served in the Republic of Colombia, South America. AR 720, 3991. Thereafter, from 2006 to 2007, and again in 2009, Mr. Buholtz deployed to Iraq in support of Operation Iraqi Freedom.[3] AR 720, 1702–06, 2662. Among Mr. Buholtz's military awards and decorations are the Bronze Star Medal "for exceptionally meritorious service" and the Army Commendation Medal "for meritorious service" during his deployments to Iraq. AR 1704, 2439–40. During his later deployments to theaters of combat operations, Mr. Buholtz began exhibiting symptoms of PSTD and panic disorder–a diagnosis later confirmed by the Medical Evaluation Board (MEB). AR 2968–87 (Jan. 24, 2011 MEB psychological examination and diagnosis); AR 2988–2994 (Jan. 14, 2011 MEB physical examination and diagnosis). On May 6, 2011, the Physical Evaluation Board (PEB) found Mr. Buholtz physically unfit to perform his military duties and recommended he be placed on the Temporary Disability Retirement List pending reexamination in February 2012 or a determination of permanent disability by the United States Army Physical Disability Agency (PDA).[4] *See* AR 2946–48. The PDA review was administratively terminated on July 11, 2011, as a consequence of Mr. Buholtz's proposed elimination (discussed below). *See* AR 270.

In the interim, on March 31, 2010–immediately following his civilian arrest for the alleged sexual assault of a minor and his release on bail (addressed below)– Mr. Buholtz submitted a Request for Voluntary Special (Expedited) Retirement. AR 2895–97. Upon receiving notice of the criminal charges, Division Commander Major General (MG) Daniel Allyn[5] initiated elimination proceedings on August 5, 2010, and notified Mr. Buholtz of his proposed separation. AR 2755–59; *see, e.g.*, AR 505–11, 2751–53, 2921 (Board of Inquiry scheduling). In addition to specifying the reasons for the proposed elimination, MG Allyn advised Mr. Buholtz he could administratively challenge his involuntary separation or: tender his resignation in lieu of elimination; request discharge in lieu of elimination; apply for retirement in lieu of elimination; or appear before a Board of Inquiry to show cause for retention. AR 277–79. After initially requesting a Board of Inquiry, on October 4, 2010, Mr. Buholtz requested Voluntary Retirement in Lieu of Elimination, seeking to be released from active duty and placed on the retired list pending the conclusion of

---

[3] Between December 1990 and April 1991, during his initial service on active duty, Mr. Buholtz was deployed to Iraq in support of Operation Desert Storm. AR 720, 2970. Thereafter, between January 2002 and July 2003, Mr. Buholtz served in the Korean Demilitarized Zone (DMZ). AR 720, 2970–71.

[4] In early May 2011, the Department of Veterans Affairs proposed a 50% disability rating for Mr. Buholtz attributable to PTSD and a 20% disability rating for back issues (i.e., angular bulging, thoracolumbar spine) related to his military service. AR 383–97, 2948–49.

[5] In accordance with Army Regulation (AR) 600-8-24, MG Allyn was the General Officer Show Cause Authority (GOSCA) and, thus, regulatorily entrusted as the initiating officer.

the above-referenced MEB/PEB process.  AR 713–15.  MG Allyn recommended approval of Mr. Buholtz's request for retirement in lieu of elimination but recommended against Mr. Buholtz's request to process through medical disability channels.  AR 376, 498, 2481.

On July 21, 2011, the Secretary of the Army, through the Deputy Assistant Secretary of the Army (Review Boards), Manpower and Reserve Affairs, denied Mr. Buholtz's request for medical disability retirement and, instead, approved his retirement in lieu of elimination.  AR 270.  Consistent with the recommendation of the Army Grade Determination Review Board (AGDRB), Mr. Buholtz was separated effective October 31, 2011, and placed on the retired list effective November 1, 2011, with a reduction in grade from Lieutenant Colonel (O-5) to Major (O-4).  AR 270; *see* AR 271–72, 702–03, 719, 1303–04, 2370–72.  The reduction in grade was based on the AGDRB's determination that Mr. Buholtz last served satisfactorily as a Major.  AR 272.  Mr. Buholtz's Certificate of Release or Discharge from Active Duty (DD Form 214) lists his Type of Separation as "Retirement" and Character of Service as "Honorable," but includes the Separation Code "RNC" based upon "Unacceptable Conduct."  AR 2662.  As of his retirement, Mr. Buholtz was credited with 27 years and one day of military service under 10 U.S.C. § 1405.[6]  AR 702.

## II.   Civilian Criminal Proceedings

On March 22, 2010, Mr. Buholtz was arrested on a Collin County (Texas) arrest warrant signed by a magistrate judge on the charged criminal offense of sexual assault of a child (second degree felony).[7]  AR 2760–62.  On March 26, 2010, he was released on bond initially set at $1 million (reduced to $15,000 cash or $150,000 bond) and, relevant here, ordered to wear a global positioning satellite (GPS) electronic ankle monitor bracelet.  AR 2762, 2764–65.  Within hours of his release, and again on April 7, 2010, Mr. Buholtz was arrested for violating a condition of his bond and the terms of a March 23, 2010 Emergency Protective

---

[6] The Army denied Mr. Buholtz's requests to be placed on voluntary excess leave and/or accrued transition leave rather than remain in civilian confinement status between August 23, 2011, and his November 1, 2011 retirement date, resulting in a disputed reduction of 70 days of credited military service.  AR 104–08.  Mr. Buholtz's civilian confinement began on or about June 14, 2011.  *See* AR 105.  Around that time, the 1st Cavalry Division Chief of Staff, Colonel Philip Battaglia, directed 30 days accrued annual leave be credited to Mr. Buholtz.  By law, Mr. Buholtz is not entitled to service credit during periods of civilian confinement.  10 U.S.C. § 972(b)(3).

[7] On March 8, 2010, two weeks prior to his arrest, Mr. Buholtz filed a petition for divorce.  AR 2541–46.  In contesting the Army's decision to reduce his retirement grade from Lieutenant Colonel to Major, Mr. Buholtz noted the timing of the state criminal charges filed against him relative to his filing for divorce, stating: "Indeed, my wife has herself since been charged with child sexual abuse offenses in Colombia, which raises serious questions about her credibility as to the allegations against me . . . ."  AR 378.

4

Order directing he stay away from his alleged victim.[8]  AR 2774–76; *see also* AR 2770–73.  On April 23, 2010, Mr. Buholtz was again released on bond with stricter conditions.  AR 165–67, 2784–85; *see also* AR 2786–89 (Military Protective Order similarly modified).  On December 9, 2010, a Collin County grand jury returned a True Bill of Indictment against Mr. Buholtz, charging him with eighteen (18) counts of sexual abuse of a minor.[9]  AR 301–04.

On June 8, 2011, a federal grand jury sitting in the Eastern District of Texas returned a one-count indictment (under seal) against Mr. Buholtz, charging him with interstate transportation of a minor with the intent to engage that minor in sexual activity, in violation of 18 U.S.C. § 2423(a).  *See United States v. Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF 1).  Immediately following his June 13, 2011 arrest, Mr. Buholtz made his initial appearance before a United States magistrate judge, was arraigned and ordered detained pending trial.  *See id.* (ECF 5, ECF 10 at 1).

On November 14, 2011, Mr. Buholtz pleaded guilty to a one-count superseding indictment charging him with interstate transportation of a minor for sexual purposes in violation of 18 U.S.C. § 2423(a).  *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF 45, 49–56).  In pleading guilty, Mr. Buholtz admitted transporting a minor from California to Texas in March 2007 with the intent to engage in sexual activity and, in fact, engaged in sexual activity with the minor in both states.[10]  *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF 55).  For the commission of this federal offense, on March 25, 2013, Mr. Buholtz was sentenced to a ten-year term of imprisonment, followed by a five-year term of supervised release, and ordered to pay a mandatory $100 special assessment.[11]  *See Buholtz*, No. 11-cr-135 (E.D. Tex.)  (ECF 85–86).  Mr. Buholtz was released from federal prison on February 3, 2020, and began serving his term of supervised release.

---

[8] A similar Military Protective Order was entered on March 30, 2010.  *Compare* AR 2770–73 *with* AR 2780–83.

[9] On February 1, 2011, without elaboration, the Case Review Committee (CRC) at Fort Cavazos (f/k/a Fort Hood)–an Army installation located near Killeen, Texas–reviewed the alleged child sex abuse incident report and "determined that it did not meet [the] criteria for child abuse."  AR 235.

[10] Mr. Buholtz's efforts to later withdraw his guilty plea were denied.  *See United States v. Buholtz*, No. 11-cr-135, 2013 WL 842851 (E.D. Tex. Jan. 24, 2013), *adopted*, 2013 WL 842845 (E.D. Tex. Mar. 6, 2013), *aff'd*, 562 F. App'x 213 (5th Cir.), *cert denied*, 574 U.S. 903 (2014).  His subsequent efforts to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 were also denied. *See Buholtz v. United States*, No. 15-cv-70, 2019 WL 1396427 (E.D. Tex. Feb. 11, 2019), *adopted*, 2019 WL 1380408 (E.D. Tex. Mar. 26, 2019), *reconsideration denied*, 2021 WL 1427639 (E.D. Tex. Apr. 15, 2021).

[11] According to the Collin County (Texas) 296th District Court website, on April 12, 2013, following Mr. Buholtz's guilty plea and sentencing on the federal charge, the state charges were dismissed. *See* https://apps2.collincountytx.gov/JudicialRecords (Case No. 401-82696-2010) (criminal docket) (last visited July 29, 2023); *see also* AR 3496 (dismissal of emergency protective order).  Thereafter, on or about September 18, 2020, Mr. Buholtz's related convictions for violating the March 23, 2010 Emergency Protective Order were expunged.  AR 3408–14.

Mr. Buholtz was rearrested on November 2, 2022, in the Eastern District of Texas for allegedly violating the terms of his supervised release.[12] *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF No. 147). During his November 3, 2022 initial appearance, the duty magistrate judge granted the United States' motion to detain Mr. Buholtz.[13] *See id.* (ECF 147–50). Thereafter, on December 15, 2022, the magistrate judge conducted a final revocation hearing and found "ample evidence" Mr. Buholtz violated the terms of his supervised release. *See id.* (ECF 158, 160). The magistrate judge continued Mr. Buholtz's detention and recommended an 18-month term of imprisonment, followed by five years of supervised release. *See id.* (ECF 160 at 7). The magistrate judge further recommended imposing an additional special condition that "[Mr. Buholtz] must not allow any female friends, associates, colleagues, or tenants to reside on [his] property or at [his] residence" during his term of supervised release. *See id.*

On January 25, 2023, Mr. Buholtz appeared before a United States district judge for allocution. *See id.* (ECF 163). Save the recommended 18-month prison term, the district judge adopted the findings and conclusions of the magistrate judge; the district judge determined an upward variance was warranted and sentenced Mr. Buholtz to a 36-month term of incarceration. *See id.* (ECF 163–64); *United States v. Buholtz*, No. 11-cr-135, 2023 WL 425390 (E.D. Tex. Jan. 26, 2023). Judgment was entered accordingly. *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF 165). Mr. Buholtz is currently incarcerated in Federal Correctional Institution, Seagoville (FCI Seagoville), located in Seagoville, Texas. His current release date is April 23, 2025.[14]

### III.   Administrative Military Proceedings

Beginning in or about June 2005, and continuing through the litigation of this case, Mr. Buholtz filed a series of applications for administrative relief and requests for reconsideration with the ABCMR, including:

| Central Issue(s) | ABCMR Docket No. | Application Date (AR Cite) | Decision Date (AR cite) | Result |
|---|---|---|---|---|
| Promotion to Colonel (FY 2004) | 2005-0009253 | June 1, 2005 | Oct. 25, 2005 | Denied |

---

[12] The violations alleged included: an August 24, 2022 arrest on a state charge of indecent assault; failure to abide by the terms of a sex offender treatment program resulting in his dismissal from the program for inappropriate behavior on or about August 30, 2022; possession of sexually explicit materials (i.e., nude photographs of his ex-wife Mr. Buholtz admitted accessing from her cellphone); unauthorized email contact with his minor child; and failure to timely submit monthly supervision reports. *See Buholtz*, No. 11-cr-135 (E.D. Tex.) (ECF No. 160 at 2).

[13] On November 9, 2022, the assigned magistrate judge found probable cause of the alleged supervised release violations and ordered Mr. Buholtz's continued detention. *See id.* (ECF No. 154).

[14] *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (inmate: Kenneth NMI Buholtz) (last visited July 28, 2023).

| | | | (AR 3185) | (AR 3940–43) | |
|---|---|---|---|---|---|
| – | Requests for Reconsideration | 2010-0018892 | Oct. 18, 2006 (AR 3181–3251) & July 15, 2010 (***)[15] | Feb. 10, 2011 (AR 1504) | Returned w/o action |
| Reimbursement: Physical Security Upgrades to Private Residence (Colombia) | | 2010-0014215 | May 5, 2010 (AR 3058–62) | July 27, 2010 (AR 1540) | Returned w/o action |
| Promotion to Colonel (FY 2005 & FY 2006) | | 2006-0015005 | (***) | Sept. 11, 2007 (AR 1617–22) | Denied |
| – | Requests for Reconsideration | 2010-0018892 | Apr. 30, 2009 (AR 1505–09) & July 15, 2010 (***) | Feb. 10, 2011 (AR 1504) | Returned w/o action |
| OER Expungement (June 5, 2003 to May 15, 2004) | | 2007-0013560 | Sept. 29, 2007 (AR 3141–80) | Nov. 27, 2007 (AR B4181–85) | Denied |
| Total Operational Flying Duty Credit (TOFDC) & Pilot Status Code (PSC) | | 2008-0011488 | July 10, 2008 (AR 675–82) | June 25, 2009 (AR 1569–79) | Denied |
| – | Request for Reconsideration | 2010-0013087 | Apr. 11, 2010 (AR 590–643) | Aug. 10, 2010 (AR 563–68) | Denied |
| Military Whistleblower Protection Act, 10 U.S.C. § 1034 | | 2009-0010073 | Apr. 30, 2009 (AR 3063–3140) (AR B3352–B4214) | June 22, 2010 (AR 571–89) | Denied |
| – | Requests for Reconsideration | 2016-0007218 | Mar. 26, 2016 (AR 2647–58) & Oct. 31, 2017 (AR 2627–42) | May 29, 2018 (AR 2624–25) | Returned w/o action |
| Medical Retirement (Lieutenant Colonel) vice Honorable Retirement for Unacceptable Conduct (Major) | | 2012-0022969 | Dec. 9, 2012 (AR 3304–51) | Aug. 27, 2013 (AR 250–56) | Denied |
| – | Request for Reconsideration | 2014-0015567 | (***) | Feb. 2, 2016 (AR 13) | Denied |
| – | Request for Reconsideration | 2021-0008655 | Dec. 16, 2020 (AR 3405–06, AR 3416) | May 12, 2022 (AR 3356–75) | Denied |
| Survivor Benefit Plan (SBP) election | | 2013-0000442 | Dec. 5, 2012 (AR 364–70) | Aug. 8, 2013 (AR 319–21) | Denied |
| Medical Retirement (Lieutenant Colonel) vice Honorable Retirement for Unacceptable Conduct (Major) & OER (Apr. 9, 2010 to Feb. 1, 2011) | | 2014-0015567 | Aug. 20, 2014 (AR 129–245) | Jan. 28, 2016 (AR 15–33) | Denied |
| – | Request for Reconsideration | 2016-0007218 | Mar. 26, 2016 (***) | May 29, 2018 (AR 2624–25) | Returned w/o action |
| – | Request for Reconsideration | 2021-0008655 | Dec. 16, 2020 (AR 3405–06, AR 3416) | May 26, 2022 (AR 3354) | Denied |
| Time-In-Service & "Bad Time" lost during civilian confinement under 10 U.S.C. § 972 | | 2015-0006188 | Oct. 15, 2014 (AR 3258) | Feb. 11, 2016 (AR 3–12) | Denied |
| – | Requests for Reconsideration | 2017-0019246 (2014-0018954) (2014-0021088) (2021-0007961) | Aug. 7, 2017 (AR 2875–2885) & Oct. 18, 2017 (AR 2660–2871) | July 1, 2019 (AR 2222–30) | Denied |

---

[15] "(***)" denotes ABCMR applications and reconsideration requests not included in the administrative record but reflected in the Board's decisions or other correspondence.

7

| | | | | |
|---|---|---|---|---|
| – Request for Action (final military pay-out of accrued leave $1,974.96) | 2021-0007961 | Dec. 22, 2020 (***) | Aug. 17, 2021 (***) (DFAS paid) | Granted |
| SBP (election and overpayment) | 2016-0004885 | Feb. 18, 2016 (AR 2523–2607) | Jan. 30, 2018 (AR 2287–96) | Granted |
| Voluntary Separation Incentive (VSI) renumeration (waiver) | 2018-0003559 | Jan. 17, 2018 (AR 2297–2307) | July 15, 2019 (AR 2212–19) | Denied |
| Concurrent Retirement Disability Pay (CRDP) | 2019-0010257 | Aug. 7, 2017 (***) | Feb. 14, 2020 (AR 2152–62) | Denied |
| – Request for Reconsideration | 2020-0007129 | Dec. 14, 2020 (AR 2006–40) & Apr. 21, 2020 (AR 2124–40) | Feb. 9, 2021 (AR 1994–2005) | Denied |
| Transfer Education Benefits (TEB) (dependent child) | 2021-0005848 | July 27, 2020 (AR 3497–3532) | June 3, 2021 (AR 3377–82) | Granted |

## IV. Procedural History

On March 13, 2015, while incarcerated in FCI Petersburg, in Virginia, Mr. Buholtz initiated this action in the United States District Court for the District of Columbia. *See Buholtz v. Trombitas*, No. 15-cv-370 (D.D.C.) (ECF 1). In his original complaint, Mr. Buholtz appealed a housing reimbursement dispute related to his active duty service in Colombia between July 2003 and April 2004. Mr. Buholtz further asserted that his two-month premature reassignment stateside was in retaliation for his reported whistleblowing activities.[16] Mr. Buholtz named as defendants seven current and retired military officers and civilian government officials as well as the Army and State Department. Alleging negligence and intentional torts, Mr. Buholtz claimed money damages in the forms of "actual financial damages," "whistleblower incentives," "treble damages," and "punitive damages" totaling more than $11.6 million. *See Buholtz*, No. 15-cv-370 (D.D.C.) (ECF 1 at 13). On January 27, 2016, in response to a dispositive motion filed by the United States, the district court transferred the action to this Court, citing the Tucker Act, 28 U.S.C. § 1491(a)(1), which vests the Court of Federal Claims with exclusive jurisdiction over claims for money damages against the United States "not sounding in tort."[17] *See id.*

---

[16] On March 11, 2004, Mr. Buholtz filed a complaint with the United States General Accounting Office (n/k/a United States Government Accountability Office (GAO)) alleging fraud, waste, and abuse within his unit station in Colombia. AR B3446–47; *see* AR B3490–3501 (U.S. Army Inspector General Agency Report of Investigation). Thereafter, beginning on June 8, 2008, Mr. Buholtz reported incidents of retaliation to the Department of Defense Office of Inspector General (DoD-OIG). *See, e.g.*, AR 2633–34, 3110–11.

[17] The United States moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, the government argued Mr. Buholtz's claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) & 2671 *et seq.*, were barred due to: plaintiff's failure to exhaust administrative remedies, 28 U.S.C. § 2675(a); the expiration of the governing two-year statute of limitations, 28 U.S.C. § 2401(b); *Feres v. United States*, 340 U.S. 135

Following the case transfer, between March 31, 2016, and August 7, 2019, Mr. Buholtz filed five amended complaints. ECF 3–4, 6, 28, 75. Count I of the 11-count fifth amended complaint alleges the government failed to timely respond to 25 requests for information and documents submitted under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Count II asserts the ABCMR failed to timely adjudicate 21 applications for the correction of military records under 10 U.S.C. § 1552. Count III charges the Army's April 2004 reassignment of Mr. Buholtz from Colombia stateside was arbitrary, capricious, an abuse of discretion, and contrary to law, entitling him to lost Aviation Career Incentive Pay (ACIP) under 37 U.S.C. § 204. Count IV asserts Mr. Buholtz engaged in whistleblower activities during his deployment to Colombia, meriting protection and relief under the Military Whistleblower Protection Act (MWPA), 10 U.S.C. § 1034, as amended, Pub. L. 117-286, 136 Stat. 4196 (Dec. 27, 2022). Count V asserts Mr. Buholtz was wrongfully denied housing allowances while stationed in Colombia under 37 U.S.C. § 204 and, thereafter, the government foreclosed the continued leasing of Mr. Buholtz's Colombian residence to other service members. Count VI contests the accuracy of "feint praise" included in Mr. Buholtz's Department of the Army (DA) Form 67-9 (Officer Evaluation Report or OER) for the period June 5, 2003 through May 15, 2004. Count VII avers Mr. Buholtz is entitled to be retroactively considered for promotion to Colonel by a duly constituted Special Selection Board (SSB) and, if selected, awarded constructive service and back pay and allowances. Count VIII challenges the denial of Mr. Buholtz's request for a waiver regarding the military's recoupment of approximately $150,000 in VSI annuity payments made following Mr. Buholtz's September 1992 voluntary separation due to his post-October 2011 collection of retired pay. Count IX contests the authority of senior officers in Mr. Buholtz's chain of command to "artificially insert themselves" into his OER for the period of April 9, 2010 through February 1, 2011; and further included false derogatory information resulting in a referred OER, which, according to Mr. Buholtz, was "a career killer." Count X asserts Mr. Buholtz's accrued leave and time-in-service (TIS) was not

---

(1950) (barring military personnel from pursuing FTCA claims for service-related injuries); and the fact the alleged tortious acts took place in a foreign country, 28 U.S.C. § 2680(k). The government further noted that punitive damages against the United States are statutorily barred, 28 U.S.C. § 2674. Finally, the government argued that plaintiff's demand for monetary damages against the United States in excess of $10,000 for claims not sounding in tort fell within the exclusive jurisdiction of the Court of Federal Claims, 28 U.S.C. § 1491(a)(1). In response to the government's dispositive motion, Mr. Buholtz moved to transfer the case to this Court in accordance with 28 U.S.C. § 1631. In granting the cross-motion to transfer the case, the district court did not address the tort claims over which this Court lacks jurisdiction. *See Starnes v. United States*, 162 Fed. Cl. 468, 473 (2022) ("The Tucker Act expressly states that this Court lacks subject matter jurisdiction over claims sounding in tort.") (citing 28 U.S.C. § 1491(a)(1); listing cases discussing well-settled jurisdictional constraints).

correctly calculated at the time of his separation.[18]  Finally, in Count XI, Mr. Buholtz claims he was wrongly separated at the reduced grade of Major and is, instead, entitled to a medical disability retirement at the rank of either Lieutenant Colonel or Colonel under 10 U.S.C. § 1201.

This matter was effectively stayed from December 2017 to February 2023 to allow the ABCMR to further consider Mr. Buholtz's administrative claims and the parties to address–through negotiation and then litigation–the contents of the administrative record.  *See, e.g.*, ECF 44, 47, 77, 92, 105, 108, 116, 121, 143, 145, 148, 151, 153, 155, 158, 159, 166.  As detailed in the Court's February 16, 2023 decision, in assessing plaintiff's motion to supplement the administrative record (ECF 132), the Court examined the 5,064-page administrative record filed by the government and performed a side-by-side comparison with the tendered 685-page supplement offered by Mr. Buholtz.  *See Buholtz*, 2023 WL 2054073, at *7–9.  In denying Mr. Buholtz's motion, the Court found that over one-third of the tendered materials (i.e., over 250 pages) were substantively identical to documents already included in the administrative record.  The balance were deemed

> cumulative of evidence already included in the administrative record and/or lack probative value: relate to claims outside the Court's jurisdiction (now dismissed); involve issues not before the Court (e.g., relief granted by the ABCMR, congressional correspondence); and non-substantive correspondence and documents (e.g., letters confirming receipt, mail tracking information, blank forms, general information).

*Id.* at 9.

In examining the complete administrative record and proffered supplemental documents necessarily through the lens of Mr. Buholtz's claims, the Court determined Count I (FOIA and Privacy Act responsiveness), Count II (ABCMR timeliness), and Count IV (MWPA claims) fell outside the Court's limited jurisdiction.  *See id.* at 6–7.  Accordingly, they were dismissed *sua sponte* in accordance with RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  *See Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*.")

---

[18] In Count X of his fourth amended complaint, Mr. Buholtz also asserted his SBP account was not properly administered under 10 U.S.C. §§ 1147–55.  He has since abandoned the SBP claim as it is not realleged in his fifth amended complaint.  *Compare* ECF 28 at 10 (fourth amended complaint dated Apr. 21, 2017) *with* ECF 75 at 2 (index to fifth amended complaint dated Aug. 7, 2019).  Presumably, the issue was administratively resolved to Mr. Buholtz's satisfaction in the interim through the ABCMR process.  *See* AR 2287–96 (ABCMR decision dated Jan. 30, 2018).

10

(citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998)). This opinion addresses the remaining counts in this case.

## DISCUSSION

I.     **Whistleblowing Claims: Counts III & V–VII**

Counts III and V–VII relate to or otherwise stem from and are inextricably intertwined with Mr. Buholtz's alleged whistleblowing activities while serving in Bogotá, Columbia.[19] In Count III, Mr. Buholtz alleges the United States Military Group (USMILGRP) in Bogotá orchestrated his April 2004 reassignment stateside in retaliation for his whistleblowing, resulting in his loss of ACIP. In Count V, Mr. Buholtz asserts officials improperly denied his residential security upgrade reimbursements in retribution for his whistleblowing activities and, thereafter, blacklisted the rental of his Columbian home (by other servicemembers) following Mr. Buholz's reassignment stateside. Count VI contends Mr. Buholz's chain of command included "feint praise" in his June 5, 2003 to May 15, 2004 OER because he "blew the whistle" on military supply discipline problems and the wrongful deaths of two innocent civilians.[20] Lastly, in Count VII, Mr. Buholtz alleges the Army took steps to ensure his military personnel record was not competitive to merit selection for promotion to Colonel because of his "2004 whistleblowing in Columbia."

Mindful that Mr. Buholtz is currently proceeding pro se, the Court construes his pleading liberally.[21] *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) ("[P]ro se pleadings are to be liberally construed.") (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980); *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (en banc)). Nevertheless, pro se plaintiffs must establish the Court's jurisdiction by a preponderance of the evidence. *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).

Although Mr. Buholtz generally cites the Tucker Act, 28 U.S.C. § 1491, and the Military Pay Act, 37 U.S.C. § 204, in support of these claims, each of these counts fit squarely within the ambit of the MWPA. Because the MWPA is not money-mandating, this Court lacks jurisdiction to adjudicate such claims.

---

[19] As addressed in Sections III and V, *infra*, Mr. Buholtz further links the claims alleged in Count V (challenging April 9, 2010 to February 1, 2011 OER) and Count XI (medical retirement and grade reduction) to his alleged 2004 whistleblowing activities. Because Counts V and XI address different time frames and assignments, and present issues principally resolved on their merits, they are addressed separately.

[20] The challenged OER is at AR 3192–93.

[21] At times during the pendency of this matter, including the filing of the fourth amended complaint, Mr. Buholtz was represented by counsel. In fact, the Court twice referred this matter to the Court of Federal Claims Bar Association Pro Bono Attorney Referral Pilot Program.

*See Gant v. United States*, 63 Fed. Cl. 311, 316 (2004) (citing *Hernandez v. United States*, 38 Fed. Cl. 532, 536-37 (1997)), *aff'd*, 417 F.3d 1328 (Fed. Cir. 2005).

The MWPA establishes a comprehensive administrative scheme for DoD and Congress–not the judiciary–to investigate a servicemember's allegations of whistleblower retaliation.[22]  In cases involving the Army, by statute, this process begins with the filing of a complaint with the DoD-OIG, continues with the referral of any proposed corrective actions to the ABCMR, and culminates with an appeal to the Secretary of Defense.  *See* 10 U.S.C. § 1034.  Indeed, as documented in the administrative record, Mr. Buholtz availed himself of the administrative process intended by Congress.  *See* AR 2633–34 (DoD-OIG MWPA complaint); AR 3110–11 (DoD-OIG denial of MWPA claims as untimely and unsubstantiated).  That he was ultimately unsuccessful does not vest this Court with the authority to entertain his claims.  The MWPA exclusively provides administrative review and remedies and, as such, Military Pay Act claims pled as or built upon MWPA violations are beyond this Court's jurisdiction.  *See Lewis v. United States*, 476 F. App'x 240, 244 (Fed. Cir. 2012) (affirming Court of Federal Claims' dismissal of servicemember's whistleblower claims for lack of jurisdiction) (citing cases).  Accordingly, Counts III and V through VII must be dismissed.

## II.   Count VIII: VSI Repayment Waiver

As noted above, on September 30, 1992, after serving nearly two decades on active duty, Mr. Buholtz accepted a voluntary separation under the VSI program. After transferring into the Army Reserve, Mr. Buholtz began receiving annual VSI annuity payments in the approximate amount of $16,000.  He later voluntarily returned to active duty from January 8, 2002, until his separation on October 31, 2011.  Following his retirement, as statutorily required under 10 U.S.C. § 1175a(h), Mr. Buholtz's monthly retired pay was (and continues to be) garnished to recover the over $152,000 in VSI annuity payments he received between October 1992 and December 2001.  In Count VIII, Mr. Buholtz claims entitlement to a waiver and refund of the VSI repayments under § 1175a(j)(5).[23]

The VSI waiver provision provides: "The Secretary of Defense *may* waive, in whole or in part, repayment required under paragraph (1) if the Secretary determines that recovery would be against equity and good conscience or would be contrary to the best interests of the United States."  10 U.S.C. § 1175a(j)(5) (emphasis added).  The governing statute is devoid of any objective tests or standards by which the judiciary can evaluate the Secretary's exercise of their

---

[22] In matters involving the United States Coast Guard, where the service is not operating under the United States Navy, the United States Department of Homeland Security is the designated agency. *See* 10 U.S.C. § 1034(e)(3)(A)(iii), (i), (j)(2)(B).

[23] Mr. Buholtz erroneously cites 10 U.S.C. § 1175a(j)(4), which concerns involuntary recall to active duty or full-time National Guard service and service-connected disability ratings.

12

discretion in granting waivers; nor has the Defense Secretary adopted a formal regulatory or policy scheme governing the substantive assessment of VSI waiver requests. Given the grant of broad discretion, the Secretary is statutorily entrusted with the administration of this program. As such, the exercise of such authority is not judicially reviewable. *See, e.g.*, *Voge v. United States*, 844 F.2d 776, 779–81 (Fed. Cir. 1988) (substantive denial of military Additional Special Pay under 37 U.S.C. § 302 is nonjusticiable). Under the Supreme Court's adage "judges are not given the task of running the Army," *see Orloff v. Willoughby*, 345 U.S. 83, 93 (1953), the Court must abstain. Accordingly, Count VIII must be dismissed as nonjusticiable under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. *See Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) ("Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy–i.e., the claim is such that the court lacks 'ability to supply relief.'") (quoting *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993)).

### III.   Count IX: Referred OER

In Count IX, Mr. Buholtz asserts officers in his chain of command "artificially insert[ed] themselves" into his April 9, 2010 to February 1, 2011 OER, and included false derogatory information, triggering his referred OER. Specifically, Mr. Buholtz contends Colonel Battaglia improperly usurped his designated rater's authority in violation of AR 623-3 (Evaluation Reporting System) to document Mr. Buholtz's "wearing of an ankle bracelet."[24]

As an initial matter, Mr. Buholtz suggests his "tiff with [Major FNU] Day, combined with his criminal issues, afforded [Colonel Battaglia] the perfect opportunity to compound the whistleblower activities already dogging him." *See* ECF 75 at 26. As discussed in Section I, *supra*, to the extent the claims alleged in Count IX stem from or otherwise relate to Mr. Buholtz's alleged whistleblowing activities dating back to 2004 and 2005, they similarly fall within the ambit of MWPA violations and beyond this Court's jurisdictional authority. *See Lewis*, 476 F. App'x at 244.

Turning to the substance of the challenged OER, the ABCMR found: "[Mr. Buholtz] failed to provide evidence showing that [his OER was] based on false information" because "he was, in fact, *wearing an electronic monitor device at the time in question*," which leaves very little room for factual debate or interpretation. *See* AR 32 (emphasis added). The Board's decision is fully supported by the record presented. Accordingly, the Court sees no reason to disturb the merits of the decision under the applicable arbitrary, capricious,

---

[24] The challenged OER is at AR 1695–97.

contrary to law, or unsupported by substantial evidence standard of review.[25] *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)).

Mr. Buholtz's citation to AR 623-3 and Colonel Battaglia's substitution of himself as Mr. Buholtz's senior rater in the OER are similarly unavailing. AR 623-3 provides in relevant part:

> The rater will be the supervisor of the rated officer for a minimum period of 90 calendar days.
>
> . . .
>
> Normally, to be eligible for an OER . . . a Soldier will complete 90 calendar days in the same position under the same rater.

AR 623-3 ¶¶ 2-5a(1), 2-10a(1) (June 14, 2019). Mr. Buholtz charges Colonel Battaglia met neither of these time-in-role regulatory requirements. The Court finds any error harmless.

The challenged portion of the referred OER was signed by Colonel Battaglia on March 2, 2011, five months *after* Mr. Buholtz tendered his October 4, 2010 voluntary request for retirement in lieu of elimination. The contested OER was further authored seven months *after* MG Allyn's initiated the August 5, 2010 elimination action. *See* AR 272–82. Put simply, Mr. Buholtz's Army career was winding down well before he received this referred OER. For these reasons, Count IX must be dismissed as either outside the Court's jurisdiction or failing to assert a viable claim for relief.

## IV. Count X: Accrued Leave & Time-In-Service

Count X alleges the Army miscalculated Mr. Buholtz's TIS at the time of his separation. The 4-month-and-17-day delta between the Army's and Mr. Buholtz's calculations of his TIS is attributable to uncredited "bad time" Mr. Buholtz accumulated while in federal prison until his separation from the Army (i.e., June 14, 2011 to October 31, 2011). Mr. Buholtz claims he

---

[25] To the extent Mr. Buholtz's challenge is based upon the state court criminal changes being expunged following his guilty plea to the federal charge, it is unavailing. At the time the OER was written, and during the rating period covered, Mr. Buholtz was in fact required to wear a GPS ankle monitor. Moreover, any collateral challenge to the propriety of the state court's condition of pretrial release is beyond the judicial competence of this Court. *See, e.g., Vereda, Ltda. v. United States*, 271 F.3d 1367, 1374–76 (Fed. Cir. 2001) (Court of Federal Claims lacks jurisdiction over innocent owner claim involving property seized by federal law enforcement officials and administratively forfeited through federal district court proceedings pled as Fifth Amendment taking).

should have been permitted to offset the 139 days of "bad time" with accrued leave rather than forfeit the leave as a result of his "civilian confinement" status. The ABCMR properly denied Mr. Buholtz's claim.

By statute, "[a] member of the Army . . . who is absent without leave . . . forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable." 37 U.S.C. § 503(a). As stated by this Court in *Lewis v. United States*: "Section 503(a) is an insurmountable obstacle to [a service member's] claims for back pay and allowances for any period during which he was incarcerated." 114 Fed. Cl. 682, 687 (2014). Accordingly, Mr. Buholtz's was not entitled military pay or the accrual of annual leave or benefits from June 14, 2011 (i.e., his first full day in pretrial detention following his arrest and arraignment on federal child exploitation charge) and continuing through his October 31, 2011 military separation.[26]

With regard to Mr. Buholtz's claim to forfeited accrued leave, the short answer is: he cashed out the maximum 60 days of accrued leave in his military career and is, therefore, entitled to no more. *See* AR 600-8-10, ¶ 2-4(b) (Aug. 4, 2011) ("By law, payment of accrued leave is limited to 60 days one time during a military career . . . ."). Mr. Buholtz admittedly cashed out 30 days of accrued leave when he first separated from the Army in 1978. AR 11. An additional 30 days was cashed out on his behalf during his period of civilian confinement in June/July 2011. AR 11–12. For these reasons, the government is entitled to judgment as a matter of law on Count X.

## V.   Count XI: Medical Retirement & Grade Reduction

In Count XI, Mr. Buholtz asserts he should have been medically discharged following his preliminary diagnoses of PSTD and panic disorder rather than retired in lieu of elimination, thereby entitling him to disability retirement pay. In support of his claim, Mr. Buholtz questions whether "combat arms officer[s]" MG Allyn and Colonel Battaglia are "qualified to make medical recommendations regarding medical discharges?" *See* ECF 75 at 34. Mr. Buholtz further contests his reduction in grade from Lieutenant Colonel to Major upon retirement.

As an initial matter, as addressed in Sections I and III, *supra*, to the extent Mr. Buholtz contends the contested personnel actions were undertaken by the Army in a continuing effort to further punish him for his alleged whistleblowing activities, *see* ECF 75 at 37 ("The Army Board reveled in the opportunity to exact revenge for years of Whistleblowing complaint

---

[26] Mr. Buholtz also should have been placed in "civilian confinement" status during his March 2010 and then April 2010 pretrial detentions following his arrests on the related state law charges.

processing."), such claims fall within the ambit of MWPA violations and beyond this Court's jurisdiction.  *See Lewis*, 476 F. App'x at 244.

Next, whatever the recommendations of Mr. Buholtz's chain of command, the Secretary of the Army, through the Deputy Assistant Secretary of the Army (Review Boards), Manpower and Reserve Affairs, independently assessed and ultimately disapproved Mr. Buholtz's placement on the temporary disability retirement list; instead, approving Mr. Buholtz's voluntary retirement in lieu of elimination and directed he be placed on the retired list in the grade of O-4 (Major) as of November 1, 2011.  AR 2710.  In rejecting Mr. Buholtz's claimed entitlement to disability retirement and, instead, confirming the decision to approve his request for voluntary retirement in lieu of separation, the ABCMR explained: Mr. Buholtz's PSTD neither caused nor mitigated his charged criminal conduct.  *See* AR 32.  Mr. Buholtz's reduction in rank was similarly attributable to his premeditated engagement in child exploitation activities and violations of the related civilian and military protective orders while serving less than honorably in the rank of Lieutenant Colonel.  There is no basis in law or in fact for this Court to disturb these medical and military judgment decisions.

In determining Mr. Buholtz's preliminary medical diagnoses did not merit further consideration for a possible disability retirement assessment, and finding Mr. Buholtz last served satisfactorily in the rank of Major (i.e., prior to his promotion to Lieutenant Colonel effective September 1, 1999), the Army cited Mr. Buholtz's March and April 2010 violations of civilian and military protective orders and his March 2010 admission to civilian law enforcement that he purchased a sex toy for the child he was then accused of, and later charged with, sexually assaulting.[27, 28]  The subsequent dismissal of the state criminal charges and recent expungement of the protective order violations are of no moment.  As explained *supra*, the state abandoned its criminal prosecution only *after* Mr. Buholtz pled guilty and was sentenced to 10 years in prison on related federal criminal charge (i.e., interstate

---

[27] According to state court filings, when interviewed by law enforcement officials, Mr. Buholtz "admitted that he purchased [a vibrator] for the victim when she was 15."  AR 349.  The record before the ABCMR, in turn, states Mr. Buholtz "admitted to civil law enforcement that he purchased *and mailed* a sex toy to a minor child, the alleged victim in his civil criminal case."  AR 24 (emphasis added).  In addressing this issue, Mr. Buholtz focuses on denying he mailed the object.  Whatever the mode of delivery, the Army's actions were clearly predicated on the then-pending (later proven) child exploitation charges against Mr. Buholtz.  Mr. Buholtz's current challenge to the inclusion of the phrase "and mailed" into his reported confession is a quintessential red herring.

[28] The ABCMR summarily dismissed the CRC's February 1, 2011 determination that the then-pending charges of sexual assault did not qualify as child abuse, citing the committee's failure to address Mr. Buholtz's violations of the civilian and military protective orders and his admitted purchase of a sex toy for the minor child.  AR 31.

16

transportation of a minor for sexual purposes in violation of 18 U.S.C. § 2423(a)).

In reaching the precipitous end to his then 35-year military career following his March 2010 arrest on civilian charges of sexually assaulting a child, Mr. Buholtz was confronted with the proverbial "choice of unpleasant alternatives." *See Sammt v. United States*, 780 F.2d 31, 33 (Fed. Cir. 1985). When informed by MG Allyn that elimination proceedings had been initiated, Mr. Buholtz was offered the following options: administratively challenge his involuntary separation; resign; request a discharge or retirement; or show cause why he should be retained. AR 277–79. Mr. Buholtz initially requested to appear before a Board of Inquiry for a retention hearing. AR 505. A week before his scheduled appearance, however, Mr. Buholtz submitted his request for voluntary retirement in lieu of elimination, with the additional request for a medical discharge. AR 713. In an effort to salvage the most of his retired pay and benefits, Mr. Buholtz made a calculated (and voluntary) choice among the limited options provided. *See Cruz v. Dep't of Navy*, 934 F.2d 1240, 1245 (Fed. Cir. 1991) ("This court has repeatedly held that the imminence of a less desirable alternative does not render involuntary the choice made.") (citing cases). As such, this Court cannot alter the consequences.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, for Judgment on the Administrative Record (ECF 177) is **GRANTED** and Plaintiff's Cross-Motion for Judgment on the Administrative Record (ECF 182) is **DENIED**. The remaining deadline included in the Court's July 13, 2023 Order (ECF 184) is **VACATED**. The Clerk of Court is directed to **ENTER Judgement** accordingly.

It is so **ORDERED**.

Armando O. Bonilla
Judge